Richard E. Donahoo, State Bar No. 186957
Thomas J. Welch, State Bar No. 242065
**DONAHOO & ASSOCIATES**
440 First Street, Suite 101
Tustin, California 92780
Telephone:  (714) 953-1010
Facsimile:  (714) 953-1777
rdonahoo@donahoo.com
twelch@donahoo.com

Attorneys for Plaintiffs Oscar Ruiz, Pedro Gonzalez,
Everardo Garcia, Jorge Frias and all those similarly situated

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR RUIZ, PEDRO GONZALEZ, EVERARDO GARCIA, AND JORGE FRIAS, each individually and on behalf of all those similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TRUGREEN LANDCARE, LLC, a Delaware Limited Liability Company; TRUGREEN LANDCARE, a California General Partnership; TRUGREEN COMPANIES, LLC, a Limited Liability Company of unknown origin; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut Corporation; and DOES 1 through 10,<br><br>Defendant. | Case No. CV-06-0907 PSG (CWx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS**<br><br>**Date:  October 27, 2008**<br>**Time:  1:30 pm**<br>**Ctrm:  790** |

# TABLE OF CONENTS

**Page**

I.      INTRODUCTION………………………………………………………...1

II.     OVERVIEW OF THE LITIGATION AND SETTLEMENT……………………………2

III.    ATTORNEYS' FEE AWARD………………………....…………………………3

    A.    25% of the Maximum Settlement Amount Is An Appropriate
        Amount For Attorneys' Fees…………………………………………3

    B.    The Skill and Experience of Class Counsel Created a
        Benefit to the Class…………………………………………… 5

    C.    Class Counsel Bargained for TruGreen to Bear Administration Costs
        Exceeding $50,000………………………………………………..6

    D.    Class Counsel Bargained for Additional Procedures to Improve Notice…….6

    E.    The Inherent Risks Of The Litigation Supports The Fee Award……………7

    F.    Public Policy Supports An Award of Attorney's Fees To Encourage
        Competent Counsel To Enforce Wage And Hour Laws………………………8

    G.    Not a Single Objection Was Received From Any Class Member, Either To
        The Settlement Terms or To The Requested Attorney's Fees………………9

IV.     CLASS COUNSEL IS ENTITLED TO REIMBURSEMENT OF
        REASONABLE LITIGATION EXPENSES…………………………………9

V.      THE CLASS REPRESENTATIVE SERVICE PAYMENTS ARE REASONABLE
        AND ARE STANDARD IN CLASS ACTIONS…………………………10

VI.     CONCLUSION………………………………………………11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' ATTORNEYS FEES
EXPENSES AND SERVICE AWARDS

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984)     3

*Bogosian v. Gulf Oil Corp.* 621 F.Supp. 27, 32 (E.D. Pa. 1985)     11

*Boeing Co. v. Van Gemert,* 444 U.S. 472 (1980)     3

*City of Detroit v. Grinnell Corp.,* 495 F. 2d. 448, 470 (2d. Cir. 1974)     7, 8

*Cook v. Niedert*, 142 F.3d 1004, 1015 (7th Cir. 1998)     10

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,* 137 F.R.D. 240, 250 – 251 (S.D. Ohio 1991)     11

*Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)     9

*Hensley v. Eckhart*, 461 U.S. 424, 436 (1983)     4

*In re Activision Sec. Litigation, 723 F. Supp. 1373 (N.D. Cal. 1989)*     4, 5

*In re First Fidelity Bancorporation Sec. LItig.*, 750 F. Supp. 160, 163 (D.N.J. 1990)     7

*In re King Resources Co. Sec. Litig.*, 420 F.Supp. 610, 636-637 (D.Colo. 1976)     7

*In re Washington Public Power Supply Sys. Sec. Litig., 19 F.3d 1291 (9th Cir. 1994)*     3,4,7

*Kickoff v. Flynn786 F.2d 320, 325-326 (7th Cir. 1986)*     4

*Muehler v. Land O'Lakes, Inc.*, 617 F.Supp. 1370, 1375-1376 (D.Minn. 1985)     7

*Paul, Johnson, Alston, and Hunt v. Graulty, 886 F.2d 268 (9th Cir. 1989)*     3, 4

*Six Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301 (9th Cir. 1990);*     3

*Torrisi v. Tucson Elec. Power Co., 8 F. 3d. 1370*     3

*Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 300 (N.D. Cal. 1995)     10,11

*Yap v. Sumitomo Corp. Of America*, 1991 U.S. Dist. LEXIS 2124, 1991 WL 29112, 9 (S.D.N.Y. Feb 22, 1991)     4

OTHER AUTHORITIES

*(Newberg on Class Actions, 3rd ed. (1992) Section 14.01).*     5

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3    In conjunction with final approval of the settlement, Plaintiffs Oscar Ruiz, et al., and

4    Class Counsel Donahoo & Associates submit this memorandum in support of an order setting

5    Plaintiffs' attorneys' fees, expenses and service awards as embodied in the class action

6    settlement preliminarily approved by the Court on May 22, 2008 (Doc. 73).[1]   The Settlement

7    resolves Plaintiffs' and the class members' wage and hour claims against Defendants and creates

8    a settlement fund of One Million Three Hundred Eighty Six Thousand Four Hundred Dollars

9    ($1,386,400) to satisfy class members' claims, and attorneys' fees, service awards, and costs.[2]

10    Under the Settlement, Class Counsel is entitled to receive up to $355,733 in attorneys'

11    fees plus actual costs up to $25,000.  The proposed award of $355,733 is *25.6%* of the

12    $1,386,400 Maximum Settlement Amount.  Defendants have stipulated to the reasonableness of

13    the Class Attorneys' Fee Award and do not oppose the award.  (*See* Exh. A, ¶ 39).

14    Based on the work undertaken, the benefit to the class and pursuant to the Settlement,

15    Class Counsel respectfully requests the Court award **$355,733** in attorneys' fees costs in the

16    amount of **$17,309.18**.

17    Further, concurrent with final approval and pursuant to the Settlement Agreement, Class

18    Counsel applies for Service Awards on behalf of the Class Representatives in the amount of

19    **$15,000** to Oscar Ruiz; **$5,000** to Pedro Gonzalez; **$5,000** to Everardo Garcia; and **$5,000** to

20    Jorge Frias.  The payments are to reward them for their effort in prosecuting the case, including

21    retaining counsel, reviewing and authorizing the filing of the complaint, contacting potential

22    witnesses, assisting with the research and analysis of TruGreen's payroll and time data, and for

23

24    [1]    The fully executed settlement was filed with the parties' Joint *Ex Parte* Application Giving
Notice of Class Action Settlement (Doc 40) and as Exhibit A to the previously filed Declaration of
25    Richard E. Donahoo (Doc 52), filed in support of the Parties Joint Motion for Preliminary Approval.
Mr. Donahoo's previously filed declaration (Doc 52) is hereinafter referred to as "Donahoo Decl." and
26    the Settlement Agreement as "Exh. A".
27    [2]    The Settlement Agreement permits up to $50,000 in administration costs to be paid from the
Total Maximum Settlement Amount.  Defendants agreed to pay any additional administration costs
28    exceeding $50,000.

providing information to Class Counsel regarding TruGreen's practices with respect to meal and rest periods and payment of prevailing wages.

The Settlement is the product of intensive investigation and vigorous negotiations between determined adversaries and mediation before a respected mediator. It has received the support of the class, with no objections filed. Class Counsel, who are skilled attorneys and experienced in complex litigation and employment law, believe the settlement is reasonable, fair and adequate in light of the strengths and weaknesses of the claims and defenses, and the risks, expense and complexities of continued litigation. Of the 13,864 class members, no objections have been received to the Settlement or to payment of the requested attorneys' fees, expenses and service awards.[3]   An attorneys' fee award of 25% is reasonable and should be approved.

## II.   OVERVIEW OF THE LITIGATION AND SETTLEMENT

Plaintiffs are landscape workers and former employees of Defendant TruGreen LandCare who were employed with TruGreen during the four years preceding the filing of the original complaint. Travelers is a surety that bonded certain Trugreen projects.

California law requires that an employer provide its hourly employees with a 30-minute meal break for every five-hour increment of time worked and to mandatory rest periods in the middle of each work period. (*Cal. Labor Code §§ 226.7, 512*). Plaintiffs allege that during the relevant time periods TruGreen failed to provide timely meal periods and rest periods in conformance with *Labor Code* § 226.7 and 512 and to make payments for missed meal and rest periods as required under *Labor Code* § 226.7(a). In addition, Plaintiffs also alleged that on certain public works projects, TruGreen failed to comply with California's Prevailing Wage Law ("PWL") that requires payment of prevailing wages on California public works projects

---

[3] Concurrently with this memorandum, Class Counsel files the declaration of John Kean, General Manager of Rosenthal & Company, LLC, the court appointed Settlement Administrator. Mr. Kean testifies of the number of class members (13,864) (¶3) and the notice and claims procedures undertaken and the status of the claims process. The declaration evidences completion the numerous procedures order by the Court to effectuate the best notice practicable to the class. Of the 13,864 class members 6,822 class members were found to have bad addresses (¶14). Of the remaining 7,042 class members, 1,341, or 19%, filed claim forms (¶18.) Another 182 class members were re-sent the Notice and their Notice Period has been extended to September 29, 2008. (¶19). Three class members opted out of the settlement (¶16). No objections to the settlement were received. (¶17).

1    (California Labor Code §§ 1771, 1774 et seq.).

2           Defendants vigorously defended themselves in the litigation, and denied all of Plaintiffs'

3    claims and allegations.  TruGreen contends that it has fully complied with applicable law and is

4    not liable to Plaintiffs or the Class for any of the asserted damages.  On May 22, 2008 the Court

5    preliminarily certified the settlement pursuant to the settlement agreement.  (Doc 73).

6    **III.    ATTORNEY'S FEES AWARD**

7           **A.    25% Percent of the Maximum Settlement Amount Is An Appropriate**

8                  **Amount For Attorneys' Fees.**

9           For their efforts in creating a settlement for the benefit of the class, Plaintiffs' Counsel

10   seek as attorneys' fees 25.6% of the maximum settlement amount recovered for the Class.  In

11   recent years, the percentage-of-recovery method has become the prevailing method for awarding

12   fees in such cases.  This is true in this Circuit and throughout the United States.  A percentage-

13   of-recovery fee most fairly correlates the compensation of counsel to the benefit conferred upon

14   the class.  The United States Supreme Court recognizes that reasonable attorney's fees in class

15   action cases may be based upon a percentage of the benefit bestowed on the class.  See *Blum v.*

16   *Stenson*, 465 U.S. 886, 900 n.16 (1984).  In *Boeing Co. v. Van Gemert,*  444 U.S. 472 (1980),

17   the Supreme Court specifically held (at page 478), that a fee based upon a percentage of a

18   common fund is entirely proper and should be based upon the gross value of the fund, not just

19   the claims made:

20          [T]his Court has recognized consistently that a litigant or **a** lawyer who recovers a
            common fund for the benefit of persons other than himself or his client is entitled
21          to a reasonable attorney's fee from the fund as a whole.  The common fund
            doctrine reflects the traditional practice of courts in equity, and it stands as a well-
22          recognized exception to the general principle that requires every litigant to bear his
            own attorney's fees.  The doctrine rests on the perception that persons who obtain
23          the benefit of a lawsuit without contributing to its cost are unjustly enriched at the
            successful litigant's expense. (emphasis added).

24          The Ninth Circuit also expressly approves of the percentage method for calculating fees

25   in common fund class action cases.  See, e.g., *In re Washington Public Power Supply Sys. Sec.*

26   *Litig.*, 19 F.3d 1291 (9th Cir. 1994); *Torrisi v. Tucson Elec. Power Co.*, 8 F. 3d. 1370 (9th Cir.

27   1993); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990); *Paul,*

28   *Johnson, Alston, and Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989).  As the Ninth Circuit

3

explains:

> "it is well settled that the lawyer who creates a common fund is allowed an extra award, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit."
> *Paul, Johnson, supra,* 886 F.2d at 271 (emphasis in original, citations omitted).

The criteria may be met if "each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum [settlement] recovered on his behalf." *Paul, Johnson, supra,* 886 F.2d 268, 271 (9th Cir. 1989), quoting *Boeing, supra,* 444 U.S. at 497. Here, the class of beneficiaries is clearly identifiable. The Court preliminary certified a Class consisting of all persons employed by TruGreen as non-exempt employees in the State of California between July 12, 2002 and May 22, 2008. The Class Members were identified using Defendant's employment records. In all, 13,864 persons were identified as Class Members.

Percentage attorney's fees awards also made good sense. First, this approach is consistent with fee agreements in the private marketplace, where plaintiffs lawyers are typically paid a contingent fee based on a percentage of the recovery. Second, it harmonizes the lawyers' interest in being paid a fair fee with the class members' interest in achieving the maximum recovery in the least amount of time. A percentage fee aligns the interest of lawyer and client because the lawyer only gains to the extent the client gains, where as "[t] he scrupulous lawyer paid by the hour may be willing to settle for a lower recovery coupled with a payment for more hours." *See Kickoff v. Flynn*786 F.2d 320, 325-326 (7th Cir. 1986). Third, the percentage method reduces the burdens on the Court to perform a detailed and time-consuming lodestar analysis, while assuring that the class receives the benefits of the settlement without undue delay. *See In re Activision Sec. Litigation,* 723 F. Supp. 1373 (N.D. Cal. 1989).

The guiding principle in awarding attorney's fees is that the fee award be "reasonable under the circumstances." See, *Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d at 1296. Courts have consistently recognized that the result achieved is a major factor to consider in making a fee award. *Hensley v. Eckhart*, 461 U.S. 424, 436 (1983)(holding "the most critical factor is the degree of success obtained"). A review of class action settlements shows that courts have historically awarded fees in the range of 20-50% or more, depending on the circumstances of the case. In discussing the fee ranges, the Court in *Activision* noted that fees

4

1   typically range from 20% to 50%. See *Activision, supra,* 723 F. Supp. at 1378.

2        Plaintiffs seek attorneys' fees of $355,733 plus litigation costs of $17,309.18.

3   Defendants signed the settlement agreement agreeing to the fees and do not oppose this request.[4]

4   The Notice of Class Action and Settlement payments printed on the Claim Forms were based on

5   the Court awarding the requested fee. Not a single Class Member objected to the proposed fee,

6   or to any other part of the Settlement.

7       **B.    The Skill and Experience of Class Counsel Created a Benefit to the Class.**

8        Class Counsel are experienced attorneys, skilled in wage and hour litigation. (Donahoo

9   Decl. at ¶¶ 21-26). Class Counsel's extensive investigation and skillful preparation allowed for

10   favorable Settlement for the Class.

11        Class Counsel undertook formal discovery and obtained over 1600 boxes of documents,

12   approximately (4-5 million pages) and analyzed the extensive documentation produced by

13   TruGreen. (Donahoo Decl. ¶¶ 8-10) Class Counsel conducted interviews of witnesses and

14   putative class members and performed legal research into the legal issues impacting the case.

15   Counsel also undertook extensive refinement of the operative pleadings through motion practice

16   and amendment. In short, the investigation and discovery process was involved and thorough,

17   and placed the parties in an excellent position to evaluate the merits and value of this lawsuit.

18   The efficiency with which Class Counsel was able to secure a substantial cash settlement and

19   meaningful equitable relief should be encouraged by the courts:

20        "[A]chievement of a substantial recovery with modest hours expended should not be penalized *but should be rewarded for consideration of time saved by superior*

21   *services performed." (Newberg on Class Actions, 3rd ed. (1992) Section 14.01).*

22        Here, however, the hours were not modest. Class Counsel undertook significant work on

23   the case. Class Counsel Richard E. Donahoo has personally expended hundreds of hours

24    

25   [4]  In the Settlement Defendants agreed to pay a Maximum Settlement Amount of $1,067,200 based on a class of 10,672 members but agreed that if, based on a review of its records, the class membership

26   exceeded 10,672 that the Maximum Settlement Amount would be increased by $100 per class member. Defendants agreed to pay $355,733 in attorneys fees, representing 33.33% of the initial Maximum

27   Settlement Amount. Based on the actual records, the actual class membership was determined to be 13,864 (Keane Decl. ¶3). However, Plaintiffs counsel **did not** increase its fee request which, based on

28   the increased settlement amount, is 25.6% of the revised Maximum Settlement Amount.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' ATTORNEYS FEES EXPENSES
AND SERVICE AWARDS

litigating the case.  Associates of Class Counsel have likewise spent hundreds of hour litigating the case.  (Donahoo Decl. ¶¶ 19-20).  If this case had not settled, litigation would surely have consumed several years and would have cost both parties substantial sums.  Substantial resources would have been expended to litigate class certification issues, even before the merits of Plaintiffs' claims could be addressed.  Additional expenses would have been accrued during this time, which could have significantly reduced any amount ultimately distributed to the Class.

Instead, Counsel secured a payout for Plaintiffs' claims to be paid *now* rather than after years of lengthy litigation.  Class Members will receive the benefits of this successful litigation without the wait that can occur in these types of cases.  Therefore, Counsel should be rewarded, not penalized, for the efficient settlement achieved, and the significant benefit to the Class in receiving prompt compensation from the Settlement.  The Class, the judicial system, and the public, benefit from the prompt resolution of complex and potentially protracted litigation.  The Court therefore should encourage early settlements as a desired goal.

### C.   Class Counsel Bargained for TruGreen to Bear Administration Costs Exceeding $50,000

Class Counsel negotiated for TruGreen to pay all administration costs exceeding $50,000, which otherwise would reduce the amount of Settlement Funds available to be paid to Class Members.  TruGreen will also have to pay the expenses associated with disbursing the Settlement payment to Class Members who filed valid claims.

### D.   Class Counsel Bargained for Additional Procedures to Improve Notice

Following an initial hearing on preliminary approval, the Parties met and conferred in an effort to simplify the notice and make it more readable.  The notice was simplified and ultimately approved by the Court.  In addition, Class Counsel bargained for other procedures to increase the actual notice to class members.  In a supplemental brief prior to preliminary approval, Class Counsel proposed certain additional steps to be included into the proposed order on preliminary approval in an effort to increase participation the settlement.  (See Doc 69).  The additional procedures, which were ultimately adopted by the Court, included:

**NCOA Search-** running the proposed mailing list through the National Change Of

6

1    Address ("NCOA") database prior to the initial notice being mailed.

2         **Skip Tracing** - performing skip tracing after the initial mailing has been performed for

3    those addresses to which mail has been returned as undeliverable.

4         **Establishment of a Bilingual Call Center** providing a multi-lingual call center that

5    operates 24 hours a day, using a unique toll-free number for each case.

6         **Bilingual Reminder Post Card**  mailing a reminder post card to all class members 30

7    days prior to the expiration of the claim date.

8         Each of the additional procedures proposed by Class Counsel were adopted into the order

9    on preliminary approval and performed by the Settlement Administrator (See Doc 73, p 6,

10   ¶11.)(See Decl. of John Keane, Settlement Adminstrator).

11        **E.    The Inherent Risks Of The Litigation Supports The Fee Award**

12        Numerous cases recognize that risk is an important factor in determining a fair fee award.

13   See, e.g. *Washington Public Power Supply Sys. Sec. Litig., supra,* 19 F. 3d at 1299-1301.

14   Uncertainty that an ultimate recovery would be obtained is highly relevant in determining risk.

15   *Ibid; In re First Fidelity Bancorporation Sec. LItig.,* 750 F. Supp. 160, 163 (D.N.J. 1990)

16   (stating that risk should be evaluated by considering uncertainties at the time the attorneys'

17   undertook the representation).  "In evaluating the services rendered… appropriate consideration

18   must be given to the risks assumed by plaintiffs' counsel in undertaking the litigation.  The

19   prospects of success were by no means certain at the outset, and indeed, the changes of success

20   were highly speculative and problematical." *In re King Resources Co. Sec. Litig.,* 420 F.Supp.

21   610, 636-637 (D.Colo. 1976).  Another court observed: "No one expects a lawyer whose

22   compensation is contingent upon his or her success to charge, when successful, as little as he

23   would charge a client who had agreed to pay for his services, regardless of success." *City of*

24   *Detroit v. Grinnell Corp.,*  495 F. 2d. 448, 470 (2d. Cir. 1974).  The need to fairly compensate

25   firms that undertake risky litigation for plaintiff classes was also noted in *Muehler v. Land*

26   *O'Lakes, Inc.*, 617 F.Supp. 1370, 1375-1376 (D.Minn. 1985).  In justifying a thirty-five percent

27   fee award in that case, the court observed: "If the Plaintiffs' bar is not adequately compensated

28   for its risk, responsibility, and effort when it is successful, then effective representation for

1  Plaintiffs in these cases will disappear…" Id.

2  　　　Here, plaintiffs' counsel undertook this representation on an entirely contingent basis,

3  assuming a substantial risk that the litigation would yield no recovery and leave them

4  uncompensated.  Substantial risks and uncertainties were present in this litigation that made it

5  far from certain that any recovery for the Class would be obtained.

6  　　　Additionally, at the time of filing this case, significant controversy existed as to legal

7  requirements for meal and rest break premium pay and the statute of limitations.  Mindful of this

8  controversy, Plaintiffs insisted that any settlement of the lawsuit would have to include

9  payments to TruGreen employees going back the full four years of the statute of limitation

10  applicable to meals and rest breaks (theorizing that the Section 226.7 payments were wages

11  subject to the four year statute of Business and Professions Code Section 17200, et. seq.).  Our

12  position was based on our analysis of the strengths and weaknesses of the various arguments for

13  and against the longer statute of limitation.  Although the California Supreme Court in *Murphy*

14  *vs. Kenneth Cole Productions, Inc.* recently affirmed this interpretation to be correct, the risk

15  was great that the Court would have applied the shorter statute.

16  　　　Despite these issues and through the investment of substantial effort and resources,

17  Plaintiffs' counsel secured a settlement on behalf of Class Members.  TruGreen vigorously

18  contested liability and the amount of damages recoverable.  TruGreen was also prepared to

19  challenge class certification.  Plaintiffs would have faced substantial obstacles to certification,

20  especially with respect to rest period issues and meal break issues, and in establishing

21  TruGreen's liability and damages.  It is this kind of situation that has been recognized as

22  deserving of a substantial fee award.  *City of Detroit, supra*, 495 F.2d. at 471.

23  　　　**F.**　　**Public Policy Supports An Award of Attorney's Fees To Encourage**

24  　　　　　　**Competent Counsel To Enforce Wage And Hour Laws.**

25  　　　California laws requiring meal breaks and rest periods and payment of prevailing wages

26  are remedial in nature and, in order to effectuate their purpose of protecting employees, private

27  lawsuits are encouraged.  In fact, because the resources of state enforcement agencies are spread

28  thin, the ultimate effectiveness of the California Industrial Commission Wage Orders and Labor

1   Code provisions concerning, *inter alia,* meals and rest breaks, depends on private attorneys.

2       This truism in the long-standing statutory provisions mandating attorney's fees awards

3   for private enforcement of wage and hour laws.  See, e.g., California Labor Code Sections

4   218.5, 1194, and 2699, *et seq.*  Plaintiffs are entitled to an award of attorney's fees and costs

5   under the California Labor Code Section 218.5, which states, "In any action brought for

6   nonpayment of wages… the court shall awards reasonable attorney's fees and costs if the

7   employee prevails."

8       **G.    Not a Single Objection Was Received From Any Class Member, Either To**

9           **The Settlement Terms or To The Requested Attorney's Fees.**

10       The Court approved Notices announcing the class action and detailing the terms of the

11  Settlement Agreement.  These Notices were individually mailed by first class mail to 13,864

12  Class Members.  Among the Settlement terms detailed in the Notice, Counsel explained how the

13  Settlement Fund would get allocated, including information itemizing the deductions from the

14  Maximum Settlement Amount and the manner in which the Net Settlement Fund would be

15  allocated among the eligible Class Members.  The Notice specifically stated that the Settlement

16  provided for Counsel to recover $355,733 million as reasonable attorney's fees for their efforts

17  in this matter, costs not to exceed $25,000, and service awards of $5,000-15,000.  No objections

18  were filed by any of the Class Members either to the requested attorney's fees and costs, or to

19  any other Settlement term.  The absence of objections underscores both the Class Members'

20  satisfaction with the Settlement and the reasonableness of the requested fee in light of the

21  benefits bestowed upon the Class.

22  **IV.   CLASS COUNSEL IS ENTITLED TO REIMBURSEMENT OF**

23      **REASONABLE LITIGATION EXPENSES**

24       Class Counsel request reimbursement of their out-of-pocket expenses incurred to

25  prosecute this class action.  These expenses were incidental and necessary to the effective

26  representation of the Class.  See *Harris v. Marhoefer,* 24 F.3d 16, 19 (9th Cir. 1994).  The

27  expenses incurred in this case costs associated with mediation expenses, copying and

28  management of documents, on-line research, messenger services, postage, long distance

9

telephone and fax transmission expenses, transportation and other incidental expenses directly related to this action. See, *Harris, supra*, 24 F.3d. at 19 (Counsel "may recover as part of the award of attorney's fees those out-of-pocket expenses that would 'normally be charged to a fee paying client.") (Citations omitted). Under the Settlement Agreement, Counsel was entitled to seek reimbursement of up to $25,000 in expenses. Through judicious management of resources, Counsel held costs to only $17,309.18. Consequently, Counsel respectfully submitted that the expense request should be granted in its entirety.

## V.   THE CLASS REPRESENTATIVE SERVICE PAYMENTS ARE REASONABLE AND ARE STANDARD IN CLASS ACTIONS

A named plaintiff is an essential ingredient of any class action and an incentive award is appropriate to induce individuals to step forward and assume the burdens and obligations of representing the Class. In deciding the amount of an enhancement award for a class representative, relevant factors include the actions plaintiffs has taken to protect the interest of the class, the degree to which the class had benefited from those actions, the personal benefit (or lack thereof ) to the named plaintiff, and the amount of time and effort the plaintiff expended in pursuing the litigation. *See Cook v. Niedert*, 142 F.3d 1004, 1015 (7th Cir. 1998); *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 300 (N.D. Cal. 1995) (approving a $50,000.00 service award to named plaintiff).

Particularly in employment class actions, such as wage disputes or discrimination claims, and plaintiffs should be entitled to an enhancement award as an incentive to take the risks associated with pursuing employment claims on behalf of other employees. Where the plaintiff is a "present or past employee, whose present position or employment credentials or recommendation may be at risk by reason of having prosecuted of litigation at some personal peril, a substantial enhancement award is justified. See *Roberts v. Texaco*, 979 F. Supp. 185 (S.D.N.Y 1997) (emphasis added).

Here, the Class Representatives in this action have requested service payments in the total amount of $30,000 to be apportioned among the more 13,864 Class Members as outlined in the Settlement Agreement from the $1.3864 million settlement fund the Class Representatives

1   helped to obtain.  The amounts requested for each Plaintiff, in addition to their *pro rata* share of

2   the settlement based on their number of weeks worked, are $15,000 to Oscar Ruiz and $5,000

3   each Pedro Gonzalez, Everardo Garcia, and Jorge Frias.  The request reflects (1) the length of

4   time plaintiffs were involved in active litigation, (2) the amount of time and effort contributed

5   by each plaintiff to the litigation, (3) the documents, contacts, information, and expertise each

6   plaintiff was able to provide, and (4) the relative value of the individuals claims foregone to

7   achieve a settlement on behalf of the class as a whole.

8        The awards requested fall well within the range of service awards upheld by federal

9   district courts  See, e.g. *Van Vranken, supra*, 901 F.Supp. at 300 ($50,000 award); *Yap v.*

10  *Sumitomo Corp. Of America*, 1991 U.S. Dist. LEXIS 2124, 1991 WL 29112, 9 (S.D.N.Y. Feb

11  22, 1991) ($30,000 incentive awards to named plaintiffs); *In re Dun & Bradstreet Credit*

12  *Services Customer Litig.,* 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) ($55,000 awards to two

13  plaintiffs and $35,000 awards to three others); *Enterprise Energy Corp. v. Columbia Gas*

14  *Transmission Corp.,* 137 F.R.D. 240, 250 – 251 (S.D. Ohio 1991) $50,000 awards to each of six

15  named plaintiffs); *Bogosian v. Gulf Oil Corp.* 621 F.Supp. 27, 32 (E.D. Pa. 1985) ($20,000

16  awards to each of the two named plaintiffs).

17       The Notice sent to each Class Member detailed the proposed service awards to be paid to

18  the Class Representatives.  No one objected to the proposed payments, which indicates that the

19  Class on the whole accepted the service awards as reasonable in light of the named Plaintiffs'

20  contributions to the Settlement.  Accordingly, this Court should approve the incentive awards

21  because they are both reasonable and appropriate.

22  **VI.   CONCLUSION**

23       Without any guarantee of success, Class Counsel and the Representative of Plaintiffs

24  pursued this litigation to a successful conclusion.  The Settlement represents a recovery for the

25  Settlement Class and the Court should award Counsel reasonable attorney's fees in the amount

26  of $355,733 which is equal to 25.6% of the Maximum Settlement Amount and reimbursement

27  of expenses in the amount of $17,309.18.  The court should also approve the service awards in

28  ///

1    the amount of $15,000 to Oscar Ruiz and $5,000 each to Pedro Gonzalez, Everardo Garcia, and

2    Jorge Frias.

3

4

5    Dated:      September 26, 2008      **DONAHOO & ASSOCIATES**

6
                                        By: _____
7                                              RICHARD E. DONAHOO
                                               THOMAS J. WELCH
8                                       Attorneys for Plaintiffs OSCAR RUIZ, PEDRO
                                        GONZÁLEZ, EVERARDO GARCIA, JORGE FRIAS
9                                       and all persons similarly situated

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' ATTORNEYS FEES EXPENSES
AND SERVICE AWARDS

q SF:202064.5